McCORD, Chief Judge.
This appeal is from a final judgment construing a contract entered into between various insurance companies for payment of losses and expenses resulting from McKinley & Company, a Florida insurance corporation, having been placed in receivership by the Insurance Commissioner of Florida because a number of the companies for which McKinley had issued and sold policies were unable to pay the claims made against them. The companies operated a marine insurance pool through McKinley. Each of the insurers participating in the pool had Quota Share Agreements by which they shared the premiums, profits and losses on a Quota Share basis according to the percentages assumed by them by the terms of their agreements. Underwriters at Lloyds of London and certain alien insurers were involved heavily in the pool. The receivership of McKinley resulted primarily from a refusal by Lloyds and the alien companies to advance the funds required to cover their share of outstanding losses. Their refusal was precipitated by an audit they had made of the records of McKinley from which they claimed they had been fraudulently induced to enter into the Quota Share Agreements. *776 Because of the chaos that developed, the Insurance Commissioner called all of the participating companies together and told them they must resolve the problem of defaults in payment of claims. This resulted in most of the participating companies entering into a loss fund indenture agreeing to advance the money necessary to commence payment of the claims. Lloyds and the alien insurers refused to take part in the Indenture and filed suit in federal court seeking to rescind their Quota Share Agreement on grounds of fraud. (Ultimately Lloyds and the alien companies agreed to dismiss their suit and to pay their share of all losses. Their agreement was approved by the court in the receivership proceedings. It did not include any agreement to pay any part of the expenses of settling claims.) Other companies who were participants in the pool had become insolvent and thus were not parties to the Indenture.
Some of the companies who were parties to the Indenture were policy issuing companies and others were reinsurers. Appellant, Stuyvesant Insurance Company, was a rein-surer. The loss fund indenture set forth the procedure for contributions from the various companies to fund the payment of the losses and to pay the expenses of settling the claims. It also created a committee to administer the Indenture.
The Indenture made a distinction between contributions for losses to be made by policy issuing companies and those to be made by reinsurers. Appellant, a reinsurer as aforesaid, contends that the committee has imposed upon it a much larger obligation for contribution to the expenses than is its share under the Indenture. The trial court found that the allocations made by the committee were correct and ordered payment by appellant in accordance therewith. We affirm.
By the time McKinley was placed in receivership, it had sold policies of various companies with known claims totalling $8,989,194.68 as shown by Exhibit “A” of the Indenture. Of this amount, appellant’s original net outstanding losses were $276,-886.11 — 6.94% of the total. The Indenture provides in paragraphs 4 and 5 as follows:
“4. Each party hereto further agrees that with respect to all losses subject to this Indenture, and upon which it was the issuing company, it will initially advance the proportionate share which is due or would become due from the Underwriters at Lloyds and the alien insurers under the contracts, agreements, and treaties in effect between said Underwriters and alien insurers and McKinley & Company during the period covered by this Indenture, as reflected by the schedule of outstanding losses attached as Exhibit ‘A’.
5. Insofar as advancements to the Fund hereby created are concerned, the issuing companies hereby agree, solely for the purposes of this Indenture, to advance on the basis and in the manner herein provided, the amounts which now are or hereafter may become due from insolvent participants on the losses covered by this Indenture.” (Emphasis supplied.)
Thus, as to losses, the issuing companies shall be liable for their own losses plus the losses of Lloyds, the alien companies, and the insolvent companies based on a system of proportionate shares; the reinsurers are liable for only their own losses. Appellant is thereby liable for only 6.94% of the total losses.
The dispute here involved concerns not loss allocations but liability among the various companies for expenses. Appellant urges that the Indenture differentiates between issuing companies and reinsurers in computing expenses, as it did in computing liability for losses. After careful consideration of the terms of the Indenture, however, we have found appellant’s position to be erroneous.
Paragraphs 4 and 5 of the Indenture provide for a distinction between the issuing companies and the reinsurers for purposes of determining losses but not for determining shares for expenses. Paragraph 8 of the Indenture sets forth the method of allocation of the expenses among the parties. It provides as follows:
“8. Any expenses in connection with the execution of the terms of this Indenture, *777 other than the payment of the nominee provided for above, shall be borne by the Parties Hereto in the same proportion as their participation in the initial deposit of funds provided herein.” (Emphasis supplied.)
To determine the proportion that each party must pay toward the expenses, we must, therefore, look to the terms of the Indenture relating to the initial deposit. Paragraph 3 of the Indenture provides as follows:
“3. Such fund shall be created by receiving from each of the Parties Hereto, an initial deposit of twenty percent (20%) of their net outstanding losses as shown on Addendum marked Exhibit ‘A’, plus such additional amounts as are hereinafter agreed to, and the funds so deposited shall continue to be the property of the parties depositing same, subject, however, to all of the terms, conditions and provisions of this Indenture.” (Emphasis supplied.)
Thus, from the terms of the Indenture itself, each party contributed to the initial deposit according to its own net outstanding losses. According to paragraph 8, the expenses are to be borne by the parties “in the same proportion as their participation in the initial deposit.” The losses of Lloyds, the alien companies, and the insolvent companies were not considered in assessing the companies’ contributions on the initial deposit. Thus, in determining each party’s liability for the expenses, the losses of Lloyds, the alien companies, and the insolvent companies are not to be taken into consideration. Each party’s contribution to the expenses is to be assessed using the same proportion as that party’s net outstanding losses related to the combined net outstanding losses of all parties participating in the Indenture as the trial court found. Thereby, the expenses of the loss fund indenture are distinguished from the losses assessed under the Indenture.
It is necessary at this point that we address an additional complicating circumstance present in this case that affects the actual amount due from appellant for expenses. While the claims were being settled under the Indenture, several of the participating companies became insolvent leaving the Indenture Committee with the task of determining how those newly insolvent participating companies’ shares of the expenses would be paid. Paragraph 13 of the Indenture provides that the Committee shall have the power and authority to carry out the intent and provisions of the Indenture. The Indenture clearly intends that the expenses be paid by the participating parties. When some of the participants then became insolvent, the Committee, within its authorized discretion, declared that the expenses due to be paid by the newly insolvent companies must be absorbed by the remaining solvent companies, of which appellant was one. Appellant’s share of the expenses under the Indenture, computed by using the initial deposit ratio discussed above, amounted to 21.737% of the total expenses. However, when each solvent participant’s contribution had to be raised to cover the amounts owed by the newly insolvent companies for expenses, appellant was faced with a bill for expenses greater than the amount owed under the “initial deposit” calculation. In the wake of this expansive factual situation, the Committee arrived at the $230,578.48 figure to be paid by appellant. The trial court adopted that calculation. In consideration of the Committee’s paragraph 13 power, which is binding on all parties, to make decisions and take actions which are consistent with the intent of the Indenture, we find no abuse of discretion in the trial court’s endorsement of the Committee’s assessment of expenses to appellant.
Affirmed.
BOYER and MELVIN, JJ., concur.